Theodore Sam **ZERVOS**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 06–98–00257–CR.

Court of Appeals of Texas, Texarkana.

Submitted Feb. 3, 2000.

Decided Feb. 4, 2000.

Rehearing Overruled Feb. 29, 2000.

Roland M. Ferguson, Sulphur Springs, for appellant.

Frank Long, Franklin County/Hopkins County Dist. Atty., Sulphur Springs, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## O P I N I O N

Opinion by Chief Justice CORNELIUS.

A jury convicted Theodore Zervos of possession of more than 400 grams of cocaine and set his punishment at life imprisonment. Zervos appeals, contending that the court erred in (1) overruling his motion to suppress evidence of the contraband due to an illegal seizure and search, (2) failing to suppress the evidence because his consent to the search was involuntary, (3) failing to suppress his oral statements because they were not lawfully obtained, and (4) failing to submit the issue of unlawful search to the jury for determination. We overrule these contentions and affirm the judgment.

Officer Moseley saw Zervos, who was driving on Interstate 30 near Sulphur Springs, make a lane change without giving a proper signal. He stopped Zervos and asked him to produce his driver's license and proof of insurance. Zervos complied. Moseley questioned Zervos about where he had been and where he was going. Because of Zervos' acts and con-

tradictory statements, Moseley called for a backup officer. Zervos gave the officers permission to search his automobile, and they found over 100 pounds of powdered cocaine wrapped in duct-taped bundles and hidden in two suitcases. After Zervos was arrested and given his *Miranda*[1] warnings, he gave a videotaped statement in which he admitted that he was being paid to transport the cocaine for another person.

In his first two points, Zervos contends that evidence of the cocaine should have been suppressed because it was obtained through an illegal detention and subsequent search.

In testing the legality of searches following legitimate traffic stops, we review *de novo* the trial court's determinations of reasonable suspicion and probable cause. *See Guzman v. State*, 955 S.W.2d 85, 87 (Tex.Crim.App.1997) (citing *Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)). The amount of deference we afford to the trial court's ruling on probable cause often is determined by which judicial actor is in a better position to decide the issue. If the issue involves the credibility of witnesses, thereby making the evaluation of the witnesses' demeanor important, compelling reasons exist for upholding the trial court's decision. But if the issue is whether an officer had probable cause or reasonable suspicion under the totality of the circumstances to seize or detain a suspect, the trial judge is not in an appreciably better position than the reviewing court to make that determination. *See Loserth v. State*, 963 S.W.2d 770, 773 n. 2 (Tex.Crim.App. 1998); *Guzman v. State*, 955 S.W.2d at 87 (citing *Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. at 1662).

Although we review the issue of reasonable suspicion *de novo*, the ruling on a motion to suppress lies within the sound discretion of the trial court. *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex.Crim.App. 1996). At the suppression hearing, the trial court observes the testimony and demeanor of the witnesses and is in a better position than the appellate court to judge the credibility of the witnesses. *See id.* (citing *Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App.1990)). Therefore, we do not engage in our own factual review. Instead, we view the evidence and all reasonable inferences therefrom in the light most favorable to the trial court's ruling and sustain the ruling if it is sufficiently supported by the evidence and is correct on any theory of law applicable to the case. *Id.*

At Zervos' suppression hearing, only the officers testified; Zervos did not. The trial court heard testimony from Officers Moseley and Williams, and evaluated the facts. Affording total deference to the trial court's conclusions as to the officers' credibility and to the facts leading up to Zervos' continued detainment, we must review the evidence to determine whether the factors given by the officers as providing them with reasonable suspicion of drug trafficking were enough to justify their continued detention of Zervos beyond the detention necessary for the traffic violation.

A routine traffic stop closely resembles an investigative detention. *Berkemer v. McCarty*, 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). An investigative detention is a seizure, *Francis v. State*, 922 S.W.2d 176, 178 (Tex.Crim.App. 1996), so it must be reasonable to meet the standards required by the United States and Texas Constitutions. *See* U.S. Const. amend. IV; Tex. Const. art. I, § 9. To determine the reasonableness of an investigative detention under the Fourth Amendment,[2] we apply the guidelines set out by the United States Supreme Court

---

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. The federal *Terry* standard also applies to determinations of reasonableness under Article I, § 9 of the Texas Constitution. *See Davis v. State*, 829 S.W.2d 218 (Tex.Crim.App.1992).

in *Terry v. Ohio:* (1) whether the officer's action was justified at its inception; and (2) whether it was reasonably related in scope to the circumstances that initially justified the interference. *See Davis v. State*, 947 S.W.2d 240, 242 (Tex.Crim.App. 1997) (citing *Terry v. Ohio*, 392 U.S. 1, 19–20, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). Under the first guideline, an officer's reasonable suspicion justifies an investigative detention. *See Davis v. State*, 947 S.W.2d at 242–43 (citing *Terry v. Ohio*, 392 U.S. at 27, 88 S.Ct. 1868). Specifically, the officer must have a reasonable suspicion that some activity out of the ordinary is occurring or has occurred, some suggestion to connect the detainee with the unusual activity, and some indication the unusual activity is related to crime. *See Davis v. State*, 947 S.W.2d at 244 (citing *Garza v. State*, 771 S.W.2d 549, 558 (Tex.Crim.App. 1989)). To determine whether an officer was reasonable in his initial action, we ask whether, in light of the officer's experience and knowledge, there existed specific articulable facts which, taken together with rational inferences from those facts, reasonably warranted that intrusion. *See Davis v. State*, 947 S.W.2d at 242. We give due weight, not to the officer's inchoate and unparticularized suspicion or "hunch," but to the specific reasonable inferences he is entitled to draw from the facts in light of his experience. *See id.* at 243 n. 3. In addition, we determine reasonableness based on the totality of the circumstances. *Woods v. State*, 956 S.W.2d 33, 38 (Tex.Crim.App.1997). We use an objective standard: would the facts available to the officer at the moment of the seizure warrant a person of reasonable caution in the belief that the action taken was appropriate. *See Davis v. State*, 947 S.W.2d at 243. An investigative detention that is not based on reasonable suspicion is unreasonable and thus violates the Fourth Amendment. *Id.*

 A search that is reasonable at its inception may violate the Fourth Amendment by virtue of its excessive intensity and scope. *See Davis v. State*, 947 S.W.2d at 243. Under the second guideline, an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. *See Florida v. Royer*, 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). It follows that once the reason for the stop has been satisfied, the stop may not be used as a fishing expedition for unrelated criminal activity. *See Ohio v. Robinette*, 519 U.S. 33, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996). Also, the scope of the seizure must be restricted to that necessary to fulfill the seizure's purpose. *Florida v. Royer*, 460 U.S. at 500, 103 S.Ct. 1319.

 An officer may lawfully stop a motorist who commits a traffic violation. *McVickers v. State*, 874 S.W.2d 662, 664 (Tex.Crim.App.1993); *Armitage v. State*, 637 S.W.2d 936, 939 (Tex.Crim.App.1982). If an officer has a *reasonable basis* for suspecting that a person has committed a traffic offense, the officer may legally initiate a traffic stop. The officer also may detain a person who commits a traffic violation. *Garcia v. State*, 827 S.W.2d 937, 944 (Tex.Crim.App.1992).

 During the investigation, Moseley had the right to request a driver's license, insurance papers, information on the ownership of the vehicle, the driver's destination, and the purpose of the trip. *Mohmed v. State*, 977 S.W.2d 624, 628 (Tex.App.-Fort Worth 1998, pet. ref'd); *Ortiz v. State*, 930 S.W.2d 849, 856 (Tex. App.-Tyler 1996, no pet.). If during the course of a valid investigative detention the officer develops a reasonable suspicion that the detainee was engaged in, or soon would engage in criminal activity, a continued detention is justified. *See Davis v. State*, 947 S.W.2d at 245 (citing *Crockett v. State*, 803 S.W.2d 308, 311 (Tex.Crim.App. 1991)). After the initial traffic-violation stop, the officer is entitled to rely on all of the information obtained during the course of his contact with the citizen in developing the articulable facts that would justify a continued investigatory detention. *Razo v.*

*State*, 577 S.W.2d 709, 711 (Tex.Crim.App. [Panel Op.] 1979); *Bustamante v. State*, 917 S.W.2d 144, 146 (Tex.App.-Waco 1996, no pet.).

Zervos contends that although Officer Moseley may have had a valid reason to make the initial stop, he did not have probable cause to detain him further after the initial traffic violation investigation was completed. Zervos also relies on the proposition that his behavior was as consistent with innocent activity as with criminal activity, so it would not give rise to reasonable suspicion. He also asserts that the officer's initial stop may have been a pretextual stop. However, neither of those facts, even if true, would be relevant in determining if Officer Moseley was justified in detaining Zervos and searching his automobile. *See Woods v. State*, 956 S.W.2d 33, 38 (Tex.Crim.App.1997) (concerning apparently innocent behavior), and *Crittenden v. State*, 899 S.W.2d 668 (Tex. Crim.App.1995) (concerning pretextual stops).

We find that the officers had sufficient articulable facts and inferences to justify the initial stop of Zervos, as well as the subsequent detainment and search. The testimony shows without dispute that Officer Moseley saw Zervos change lanes on Interstate 30 without giving a proper signal. Officer Moseley immediately noticed that Zervos was extremely nervous and was shaking. When Zervos got out of his car, he continued to exhibit suspicious behavior. His hands shook, he paced back and forth nervously, constantly crossed and uncrossed his arms, and continually took change out of his pocket and counted it. He refused to look at Officer Moseley when the officer was speaking to him. Moreover, Zervos said he had been in Dallas, but he gave three contradictory statements about how long he stayed there. Zervos told the officer that he had stayed with a friend in Dallas, but he was unable to describe where the friend lived or give his address or his telephone number. Zervos said he left Dallas only three hours before he was stopped. Officer Moseley knew that Dallas is only eighty miles from the point where Zervos was stopped, and the speed limit is seventy miles per hour. Zervos also told Officer Moseley that he went to North Dallas by traveling on Interstate 30 and then turning on Interstate 45 to go to North Dallas. The officer knew that Interstate 45 went south rather than north to Dallas, and knew that it ordinarily did not take three hours to drive from Dallas to Sulphur Springs via Interstate 30. Officer Moseley, shortly after stopping Zervos, called for a backup, Officer Williams, who corroborated some of the suspicious behavior on Zervos' part. Williams arrived at the scene only minutes after Moseley stopped Zervos.

None of the facts about the stop and the activities of Zervos is disputed. No one testified to those facts except the officers, and Zervos' cross-examination of the officers did not bring out any disputed fact. Zervos contends that because Officer Moseley on cross-examination conceded that he might have momentarily taken his eyes off Zervos' vehicle when it was changing lanes, there is a disputed fact concerning the legitimacy of the stop. We disagree. Moseley said that he may not have had his eyes on Zervos all of the time, but he emphatically said he saw Zervos make the illegal lane change. Moreover, it is not necessary to show that Zervos actually violated the traffic laws. It is sufficient to show that the officer reasonably believed that a traffic violation was in progress. *See Drago v. State*, 553 S.W.2d 375, 377 (Tex.Crim.App.1977); *Edgar v. Plummer*, 845 S.W.2d 452 (Tex.App.-Texarkana 1993, no pet.); *Valencia v. State*, 820 S.W.2d 397 (Tex.App.-Houston [14th Dist.] 1991, pet. ref'd).

All of the facts and circumstances summarized above were known by the officers and were sufficient to show that, during the course of the valid investigative stop and before issuing Zervos a ticket or warning citation, the officers developed a rea-

sonable, objective suspicion that Zervos was engaged in some other kind of unlawful activity. Thus, the officers had probable cause to search Zervos' vehicle, where the contraband was found.

■ Even if the officers did not have probable cause to search Zervos' car, Zervos consented to the search. Officer Moseley initially asked Zervos if he could search his vehicle. Zervos first said he would rather not. Moseley tried to clarify Zervos' response, and Zervos then told Moseley he "didn't have anything in the car, so you can't look in the car." Shortly after that exchange, Officer Williams, the backup, arrived at the scene. Officer Moseley briefed Officer Williams on his suspicions about Zervos. Williams told Zervos that he had called for a canine unit, and that if the dog alerted on the car, the car would be searched, but if not, Zervos would be free to leave. Then Zervos said if the officers wanted to look in the car, they could. Officer Williams told Zervos that it was his decision alone whether they could search the car, and that they were not trying to intimidate him by using the dog. Also, Officer Moseley told Zervos that he did not have to consent to the search. Zervos did consent, however, and unlocked the trunk for the officers when they asked him to do so.

■ The facts that led to Zervos' consent to search are not disputed. It is undisputed that no officer brandished a gun or made any threatening gestures or used any threatening words. The validity of a consent depends on whether the officers could reasonably conclude that consent had been given. *See Powell v. State*, 5 S.W.3d 369 (Tex.App.-Texarkana 1999, no pet. h.). In this case, the facts are undisputed; only the interpretation of the facts is in question. We conclude that the facts are sufficient to show that Zervos voluntarily consented to the search of his automobile.

■ Zervos also contends that the trial court should have suppressed the video-taped statement in which Zervos admitted his guilt, because it was not voluntarily made and the officers continued to question him after he indicated he wanted an attorney.

The trial court conducted a hearing to determine if the statement was voluntary. Only the officer who took the statement testified. The other evidence relating to the voluntariness of the statement is the videotape itself. Thus, the evidence as to the giving of the *Miranda* warnings, Zervos' waiver of his rights, the voluntariness of the statement, and whether or not Zervos requested an attorney are all matters of interpreting the uncontroverted evidence. After viewing the videotape and hearing arguments of counsel for Zervos and for the State, the trial court excluded all but the first 11–1/2 minutes of the videotape.

It is undisputed that Zervos was given his *Miranda* warnings at the scene before his arrest and again before he made the videotaped statement. Officer Plaxco testified that before he took the videotaped statement, he was told that Zervos wanted to talk to him about "furthering the investigation." Plaxco then interviewed Zervos. In addition to Zervos and Plaxco, Officers Beezley and Stidham were in the room at times while the interview was being taped.

In making the interview, Plaxco first asked Zervos if the other officers had read him his rights. Zervos said, "The *Miranda?* Yeah." Plaxco then told Zervos he was going to read them again. He then read the warnings from the waiver of rights sheet. Plaxco then asked Zervos to read the rights himself, and it appears from the videotape that Zervos did so from the same waiver of rights sheet. Zervos did not indicate that he was confused about any of his rights. Plaxco told him if they got on something that Zervos did not want to talk about, they did not have to talk about it. When Zervos was signing the waiver sheet, Plaxco told him again that "if you want to terminate the interview, that's up to you."

Zervos claims he did not intend to sign the waiver sheet. The tape shows that Zervos initially tried to talk to Plaxco and that Plaxco stopped him and told him he would have to sign the waiver first. Zervos then said, "I got to sign?" After this, Plaxco told Zervos that he would like for him to go ahead and sign the waiver so they could have a conversation. At this point, Zervos took the waiver sheet, and it appears from the videotape that he signed it. The actual colloquy between Plaxco and Zervos leading to Zervos' signing the waiver is as follows:

Zervos: What's my signature for?

Plaxco: Just to show proof that I read you your rights if I have to sometime down the road.

Zervos: It's not the signing for the—

Plaxco: No, sir.

Zervos: Waiver of rights, right?

Plaxco: It's signing that you have read this paper and apparently you're wanting to waive your rights and talk to me without an attorney present. Is that right? I was told that you wanted to talk to me. That's why I'm up here.

Zervos: Nah, I just want to know what kind of trouble I'm in, that's all.

■ We have reviewed the videotape. Although some of Zervos' statement may be somewhat ambiguous, we think it is clear that Zervos intended to waive his rights and give the statement. His ambiguous statements appear to indicate that he did not understand that he could not talk to Plaxco without first signing the waiver. That certainly was a reasonable deduction for Plaxco to make. An officer questioning a suspect is not required to stop his questioning unless the suspect's invocation of his rights is unambiguous, and the officer is not required to clarify ambiguous remarks. *Dowthitt v. State*, 931 S.W.2d 244, 257 (Tex.Crim.App.1996).

The trial court excluded all of the videotaped statement occurring after Zervos claims he asked to consult an attorney, so no error is shown in that regard.

■ In another point, Zervos contends that the trial court erred in failing to file findings of fact and conclusions of law concerning the voluntariness of the statement, as required by TEX.CODE CRIM. PROC. ANN. art. 38.22, § 6 (Vernon 1979). That statute requires the court to file written findings of fact and conclusions of law supporting its conclusion that a statement was voluntarily made. The findings of fact and conclusions of law, however, need be made only when there is a question as to the facts surrounding the taking of the statement, i.e., where the facts are disputed. *Miller v. State*, 666 S.W.2d 269, 274 (Tex.App.-Dallas 1984, pet. ref'd). Here, the facts surrounding the taking of the videotaped statement are not in dispute. The only dispute is the interpretation of the statements and actions of Zervos that are shown conclusively by the videotape. The purpose of requiring the court to file findings of fact and conclusions of law as to the voluntariness of the statement is to allow the appellate court to review the propriety of the trial court's ruling that the portion of the statement allowed in evidence was voluntarily made. *See Hester v. State*, 535 S.W.2d 354, 356 (Tex.Crim.App. 1976). In this case, both the trial court and the appellate court have reviewed the videotape, so there is no need for written findings of fact and conclusions of law to be made. Thus, the failure to prepare and file the findings of fact and conclusions of law is harmless at most. *See Perez v. State*, 674 S.W.2d 851, 854 (Tex.App.-Corpus Christi 1984, no pet.); *Miller v. State*, 666 S.W.2d at 274; *Richardson v. State*, 632 S.W.2d 700, 704 (Tex.App.-Fort Worth 1982, no pet.); *see also, e.g., Parr v. State*, 658 S.W.2d 620, 623 (Tex.Crim.App.1983).

■ Finally, Zervos contends that the trial court erred in refusing to give an instruction to the jury concerning the le-

gality of his detention and search of his automobile. When the facts as to the circumstances of a detention and search are disputed, such an instruction is necessary. But the facts here are undisputed. The only issue is the interpretation of the facts and whether they raised a reasonable suspicion. That is a question of law, not of fact, so a jury charge on the issue was not required. *See Gaffney v. State*, 575 S.W.2d 537 (Tex.Crim.App. [Panel Op.] 1978); *Brooks v. State*, 707 S.W.2d 703 (Tex.App.-Houston [1st Dist.] 1986, pet. ref'd).

For the reasons stated, we affirm the judgment.