In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-05-00251-CR


______________________________




MARVIN OMAR ESPINAL ZELAYA,


A/K/A MARVIN OMAR ESPINAL, Appellant


V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 296th Judicial District Court


Collin County, Texas


Trial Court No. 296-81926-04




 




Before Morriss, C.J., Ross and Carter, JJ.


Memorandum Opinion by Justice Carter



MEMORANDUM OPINION



 Marvin Omar Espinal (1) was convicted of three charges of armed robbery by a Collin County
jury. (2) The cases were tried together, and Espinal now challenges all three convictions. (3) Espinal
presents points of error alleging: (1) improper admission of extraneous offenses during the
punishment hearing, (2) improper admission of his confession, (3) that his arrest was illegal and the
evidence obtained therefrom inadmissible, and (4) the evidence is legally and factually insufficient. 
Having reviewed the record, we will affirm the trial court's judgment. 

The Robberies

 A string of robberies were executed in the Plano area in May and June 2004. In all, the
victims said the perpetrators wore black or gray ski masks, spoke in Spanish or with a Spanish
accent, and fled in a gold sports utility vehicle (S.U.V.). Espinal was charged in three indictments
with three separate cases of armed robbery. The cases were tried to one jury. 

 Jaybinda Khanal testified he was working as a sales clerk May 11, 2004, at Sam's Beverage
in Plano when a man wearing a mask entered and pointed a gun at him. A second man with a mask
and gun entered, and the two men instructed Khanal to open the safe, which he was unable to do. 
Khanal thought one of the robbers was a "Mexican American." One of the robbers fired a gunshot 
into the store's floor. The robbers fled with about $400.00 in cash from Sam's Beverage and at least
one carton of cigarettes. Michael Childress walked into the store during the robbery; he saw Khanal
and two men in ski masks come out of the store's office, and Childress was ordered to the floor. 
Childress also said the robbers had masks and guns, and heard one speak with a Hispanic accent. 
Childress said one robber was stockier than Childress and as tall or a little shorter than Childress,
who said he was about five foot ten or eleven. During the investigation of this robbery, police were
supplied a surveillance video from a car dealership adjacent to Sam's Beverage. The video showed
a vehicle matching a witness description of the possible get-away vehicle, a gold or tan S.U.V. 

 On June 3, 2004, two men in masks and wearing gloves stole about $6,000.00 from a One
Stop gas station in Plano, according to Victor Romero, the store's cashier. One robber spoke broken
English, the other, Spanish, and one asked for the money in Spanish. Romero testified the robbers
left in a gold-colored S.U.V., possibly a Blazer, with tinted windows. Romero thought there might
have been a third person in the vehicle, because it left so quickly. Romero estimated that one robber
was about five foot seven and somewhat "big." The other robber was taller and thinner. 

 A robbery was conducted in similar fashion a week later, on June 10, 2004. Richard Ivey,
manager of the Quick-Way Food Mart on Ohio Drive in Plano, testified that, around 3:15 p.m., just
after an armored car had taken the store's deposits, a man in a ski mask entered the store with a gun. 
Ivey opened the store's safe to show the robber there was no money in it. The robber picked up a box
with about $300.00 in quarters, but the box broke and the coins scattered on the floor. The store's
assistant manager, Heide Jones, ran out of the store and flagged down a car. A second robber then
entered the store, showed Ivey the robber's gun in his waistband, and spoke to the first robber. The
two robbers then left the store, without taking any money. Ivey saw them leave the parking lot in
a gold S.U.V. Ivey said one robber spoke in Spanish and the other had a Spanish accent. Jones said
that, before she fled, she heard the first robber ask for the store's money and that he spoke with a
Spanish accent. She described the two as one being about five foot seven or eight, "chubby, not
skinny," and the other as being skinny. 

 When Jones ran to the parking lot of the Quick-Way Food Mart, she flagged down a car in
the parking lot driven by Justin King. Jones got in his car, and King pulled to the front of the store
to get the license plate number of the robbers' vehicle; the robbers' vehicle was backed up to the store
and had no front license plate. King saw at least three, possibly four, men in masks, including one
who ran into the store. King then saw three or four men in ski masks run out of the store, get into
the gold Blazer, and leave. The S.U.V. in which Espinal and the other two suspects were sighted and
arrested near was registered to Espinal. A surveillance camera at a business near the scene of the
robbery showed an S.U.V. matching the witnesses' description of the get-away vehicle. 

 A week later, on June 17, 2004, Officer Ben Thurman of the Plano Police Department was
on the lookout for the gold S.U.V. with three Hispanics, as had been described in the above
robberies. Thurman saw a gold four-door Blazer, northbound on Coit Road, coming from Dallas to
Plano, with three Hispanic males. Thurman observed that the vehicle did not have a front license
plate. The officer followed the S.U.V., which crossed lanes and cut off the officer. Officers
Thurman and Jake Wicker continued to follow the S.U.V. as the driver pulled into an Albertson's
parking lot. The three Hispanic men left the S.U.V. and went into the store. More police officers
gathered in and around the parking lot. After a time, the three Hispanic men left the store and came
back to the S.U.V., and the officers converged on them. One officer moved his squad car to block
any chance for escape. One of the suspects, Jose Cruz, walked away from the group, carrying a
duffel bag. Cruz was detained, and all three men were arrested. In Cruz' duffel bag were ski masks,
gloves, and three pistols. A subsequent DNA test showed Espinal's DNA inside one of the ski
masks. 

ESPINAL'S POINTS OF ERROR 

Extraneous Offense Testimony

 Espinal complains the trial court erred by admitting evidence of extraneous offenses allegedly
committed by Espinal "without proof beyond a reasonable doubt." During the punishment phase of
trial, the State had a translator read sections of Espinal's post-arrest interview to the jury. (4) In the
portions of which Espinal complains, he confessed to the three robberies with which he was charged,
as well as another robbery in Garland, Texas (for which Espinal does not appear to have been
charged, at least not in the cases presented herein). During the interview, the police asked if Espinal
had been involved in similar robberies in Garland and Addison. Espinal admitted participating in
the Garland robbery, but said he could not remember participating in the Addison crime. It is these
"offenses" of which Espinal complains. He posits that, when the officer asked if Espinal was
involved, even though Espinal said he did not remember one and admitted the other, and the officer's
questions were presented as testimony, this amounted to introduction of evidence of extraneous
offenses. 

 Espinal did not preserve this issue for review. Before the translator's testimony at the
guilt/innocence stage, Espinal posed an objection to about thirty lines of the interview, in which
Espinal said he and his confederates were looking at the store where they were ultimately arrested,
presumably as reconnaissance for another robbery. Espinal objected to this part of his statement as
containing extraneous offenses; the objection was overruled, and Badillo read excerpts from the
interview into evidence. 

 However, the testimony of which Espinal complains on appeal was presented during the
punishment phase. There, the only objection made to any of the testimony from the translator, who
read the transcript of Espinal's interview and statements, came after the translator related the officer's
question asking if Espinal had been involved in another robbery May 22, involving "the same
thing . . . same car, same description, everything." Espinal objected as follows: 

 [Defense Counsel]: Your Honor, at this point I'm going to object to this
portion. There's no statement by the defendant in this portion of the transcript. It's
only a conversation between the two officers, the statements with regard to -- 


 THE COURT: Let me read this in context. Just a moment.


 THE COURT: I'll overrule the objection. You may proceed. 


This objection only addresses the lack of any statement by Espinal. There is no mention of
extraneous offenses or of Rules 403 or 404(b). See Tex. R. Evid. 403, 404. Nor did Espinal request
a limiting instruction. See Tex. R. Evid. 105. Finally, although Espinal does not complain of the
trial court's charge to the jury, no objection or request was made for the charge to instruct the jury
to only consider evidence of other bad acts or wrongs if it found beyond a reasonable doubt that
Espinal was responsible. 

 To preserve error for appeal, a defendant must (1) object, (2) state the grounds with sufficient
specificity, and (3) obtain an adverse ruling. Tex. R. App. P. 33.1; see Wilson v. State, 71 S.W.3d
346, 349 (Tex. Crim. App. 2002). If a party fails to do this, error is not preserved. Further, a party
must object each time the inadmissible evidence is offered or obtain a running objection. Valle v.
State, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003). Espinal failed to preserve any error for review;
we overrule this point of error. 

Admission of Espinal's Confession 

 Espinal complains, in his second point of error, that admission of statements he made to law
enforcement officers violated his rights under the United States Constitution's Fifth Amendment and
Article 38.23 of the Texas Code of Criminal Procedure. Following his arrest with the other two
suspected robbers, Espinal was interviewed by police, including a Spanish-speaking officer who
acted as translator. As the interview began, officers read Espinal his Miranda (5) rights, then
elaborated on his rights against self-incrimination, to an attorney, and to end the interview. Espinal
answered "yes" that he understood each of these rights. Then the following occurred:

 OFFICER BADILLO: (6) - okay, um . . . okay. Since you have told me that you
understand each of these rights that I have read to you, um, that before and during any
statement that you give us [inaudible], you do it intelligent [sic], um, and you do it
voluntarily, um, and you also waive the above rights. This means that those rights
that are here that, of which I have explained them to you, that you do indeed
understand but at the end you want to talk to us. [inaudible] Do you understand it
the way I've explained? 

 

 MR. ESPINAL: Yes. 

 

 . . . . 

 

 OFFICER BADILLO: Um, uh, like I said, we want to talk with you for the reason
that you are here, because you say that you don't know why you are here. We want
to explain that to you. We want to explain it to you. And uh, we want uh, uh, um,
um, to talk with you because we've already talked with um, um, with Jose and um,
we talked with Luis and now we want to talk with you. So, um, knowing all that, do
you, um, decide to talk to us? Do you want to?

 

 MR. ESPINAL: No, I'll listen, okay?


 OFFICER BADILLO: Yes? But, you decide, right? To, to, to be here to talk to us. 
If, if, if you want, talk. If you want. 

 

 MR. ESPINAL: [inaudible] listen to you now but I have to see. 

 

 OFFICER BADILLO: Okay. That's fine. And I'm not, and I'm not saying that you
say anything to us, I just want to know if you understand all of this that I told you. 
Yes? 


 MR. ESPINAL: Yes.


 The only objection to Espinal's statements given in the post-arrest interview is the one cited
in the preceding section of this opinion. There was no motion to suppress the statement. There was
no specific objection to the statement or how it was obtained. A specific and timely objection is
required concerning the admissibility of evidence. (7) This is true even though the error may concern
a constitutional right of the defendant. Saldano v. State, 70 S.W.3d 873, 889 (Tex. Crim. App.
2002); Gauldin v. State, 683 S.W.2d 411, 413 (Tex. Crim. App. 1984) (requirement of objection
applies with equal force to alleged Miranda violations). Again, Espinal failed to preserve error. 

 Even if error had been properly preserved, we believe the confession would have been
admissible. If a suspect wishes to remain silent, the police may not continue to question him or her
in hopes of persuading the suspect to change his or her mind and give a statement. Miranda, 384
U.S. at 473-74. But a suspect's invocation of his or her rights must be unambiguous, and the police
officer does not need to clarify ambiguous remarks. Dowthitt v. State, 931 S.W.2d 244, 257 (Tex.
Crim. App. 1996) (quoting Davis v. United States, 512 U.S. 452 (1994)). The statements which
Espinal claims were invocations of his right not to make incriminating statements are not
unambiguous. See Zervos v. State, 15 S.W.3d 146 (Tex. App.--Texarkana 2000, pet. ref'd). (8) In the
overall context, Espinal's statements, "No, I'll listen, okay?" and that he would "listen to you now
but I have to see" are not unambiguous invocations of one's right to remain silent. See Dowthitt, 931
S.W.2d at 257 ("I can't say more than that. I need to rest." Held not to be unambiguous invocation
of right); Hargrove v. State, 162 S.W.3d 313, 319-20 (Tex. App.--Fort Worth 2005, pet. ref'd)
("Why should we go on because I'll be spinning my wheels. You're spinning your wheels." Held not
unambiguous); Franks v. State, 90 S.W.3d 771, 786-87 (Tex. App.--Fort Worth 2002, no pet.) ("I
don't want to talk anymore. I'm tired." Held not unambiguous invocation). A reasonable
interpretation of Espinal's comments is that he had no statement to make, but would listen to the
officers and decide whether to answer particular questions. We overrule Espinal's second point of
error. 

Legality of Arrest 

 Espinal complains, in his third point of error, that his arrest was illegal and, therefore, the
evidence obtained as a result of the arrest was inadmissible. The officers arrested Espinal and the
other two suspects in front of an Albertson's grocery store. Plano police had been on the lookout for
the S.U.V. seen at the three robberies and observed on the security camera. As summarized above,
Officer Thurman followed the vehicle and summoned assistance. After observing the three suspects
for some time, and comparing their descriptions and that of their vehicle to those given at the three
robbery scenes, officers arrested the three men as they returned to the vehicle from the grocery store. 
Jose Cruz tried to walk away from the other two. Cruz carried a duffel bag; when officers stopped
Cruz, they found the duffel bag, ski masks, gloves, and three loaded pistols. Again, Espinal failed
to preserve this issue for appellate review. He did not file a motion attacking the legality of his arrest
and made no objection to the testimony of any of the law enforcement officers. When the evidence
gathered as a result of the arrest was presented, no objection was made. When each item was
offered, defense counsel affirmatively stated, "No objection." Once a defendant objects to the arrest
as an illegal arrest, the burden shifts to the State to prove its legality. Garrison v. State, 726 S.W.2d
134, 137 (Tex. Crim. App. 1987). Here, Espinal never challenged the arrest or objected to the
evidence obtained from the arrest. Nothing is preserved for review. See generally Wilson, 71
S.W.3d at 349; Reed v. State, 487 S.W.2d 78 (Tex. Crim. App. 1972).

Legal and Factual Sufficiency 

 Espinal's final two points of error complain of the legal and factual sufficiency of the
evidence to support the jury's verdicts of guilt and findings that Espinal used or exhibited a deadly
weapon during the offenses. Other than citing general caselaw for the standards of review for legal
and factual sufficiency, Espinal presents no argument or authority in support of his assertion of error. 
See Tex. R. App. P. 38.1; McCarthy v. State, 65 S.W.3d 47, 49 n.2 (Tex. Crim. App. 2001)
(appellant failed to explain how factual record supported point of appeal; point of error waived for
failing to adequately brief issue). Espinal does not address anything in the record or attempt to show
how, for example, no rational trier of fact could have made the finding beyond a reasonable doubt, (9)
or that the evidence supporting the verdict, considered alone, is too weak to support the jury's finding
of guilt beyond a reasonable doubt; or, alternatively, that, after weighing the evidence supporting and
contravening the conviction--the contrary evidence is strong enough that the State could not have
met its burden of proof. (10) Espinal's statements that, "[t]here was no such properly admitted evidence
or testimony before the jury sufficient for them to find Appellant guilty," and "when viewed in a
neutral light, the evidence adduced at trial taken alone is too weak to support" the jury's verdict (in
his attacks, respectively, on the legal and factual sufficiency of the evidence) are at most conclusory
and do not offer any analysis or argument on which this Court can consider his contentions of error. 
The brief does not attempt to apply the legal standards for sufficiency of the evidence to the facts
of this case. We conclude that the sufficiency of the evidence issues were inadequately briefed and
present nothing for review. (11)

 We affirm the judgment.




 Jack Carter

 Justice


Date Submitted: April 26, 2006

Date Decided: September 21, 2006


Do Not Publish


1. Appellant herein has a total of three appeals before us; and Appellant's single brief, arguing
all three cases, refers to him as Marvin Omar Espinal. But, confusingly, Appellant's name is
different in each of the three trial court judgments. In cause number 06-05-00251-CR--this
case--the judgment refers to Appellant as Marvin Omar Espinal Zelaya, a/k/a Marvin Omar Espinal,
and we refer to him as Espinal throughout this opinion. In cause number 06-05-00252-CR, the
judgment refers to Appellant as Marvin Omar Espinal Zelaya, a/k/a Zelaya Marvin-Omar Espinal
and we refer to him as Zelaya throughout that opinion. In cause number 06-05-00253-CR, the
judgment refers to Appellant as Marvin Omar Espinal Zelaya, and we refer to him as Zelaya
throughout that opinion.
2. This case was transferred to this Court by order of the Texas Supreme Court's docket
equalization program.
3. See our opinions in cause numbers 06-05-00252-CR and 06-05-00253-CR.
4. Portions of Espinal's statement, in which he admitted participating in at least the three
robberies for which he was on trial, were admitted into evidence during guilt/innocence. It appears
the excerpts read during punishment were excluded at guilt/innocence by agreement of the parties. 
5. Miranda v. Arizona, 384 U.S. 436, 473-74 (1966).
6. Badillo was fluent in Spanish and acted as translator in the interview. 
7. Failure to object in a timely and specific manner forfeits complaints about the admissibility
of evidence. Unless the right involved is an absolute systemic one or one requiring an affirmative
waiver, an objection must be presented to preserve error. See Saldano, 70 S.W.3d at 888; Marin v.
State, 851 S.W.2d 275, 280 (Tex. Crim. App. 1993). 
8. When read his Miranda rights and presented a waiver-of-rights form to sign, Zervos signed
the form. When the officer said that he had been told Zervos wanted to speak with the officer,
Zervos said, "Nah, I just want to know what kind of trouble I'm in, that's all." Zervos, 15 S.W.3d at
154. Reviewing all of Zervos' comments (including those available on video tape), this Court held
that, while some of his comments may have been ambiguous, it was "clear that Zervos intended to
waive his rights and give the statement." Id.
9. See Drichas v. State, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005); Cates v. State, 102
S.W.3d 735, 738 (Tex. Crim. App. 2003) (citing Jackson v. Virginia, 443 U.S. 307, 319 (1979))
(standard of review for legal sufficiency). 
10. See Zuniga v. State, 144 S.W.3d 477, 484-85 (Tex. Crim. App. 2004) (standard of proof
for analysis of factual sufficiency).
11. Even if we found Espinal had adequately briefed this issue, we refer again to the evidence
summarized above. The evidence, viewed in a neutral light, is not too weak to support the finding
of guilt beyond a reasonable doubt; nor is there evidence contrary to the verdict strong enough that
the beyond-a-reasonable-doubt standard could not have been met. Threadgill v. State, 146 S.W.3d
654, 664 (Tex. Crim. App. 2004) (citing Zuniga v. State, 144 S.W.3d 477, 486 (Tex. Crim. App.
2004)).