

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-11-00077-CR

_____

SCOTT PATRICK MACQUARRIE, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Court at Law
Fannin County, Texas
Trial Court No. 44271

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Moseley

MEMORANDUM OPINION

Scott Patrick MacQuarrie, charged with driving while intoxicated (DWI), requested a suppression hearing. MacQuarrie alleged that the officer who had initially pulled him over for speeding did not properly use the radar device which showed that he was exceeding the speed limit. Absent a showing of the proper use of the radar device to gauge his speed as being excessive, MacQuarrie maintains, there was no probable cause to have stopped and detained him. After a hearing, the trial court refused to suppress the evidence obtained after the traffic stop, prompting MacQuarrie to enter a plea of guilty. After being sentenced to a penalty of six months in county jail with a $750.00 fine, suspended upon his placement on community supervision for eighteen months, MacQuarrie has appealed his conviction. MacQuarrie's sole point on appeal is that the trial court erred in refusing to suppress the evidence gained after the traffic stop. We affirm the trial court's judgment.

## I. Fact Summary

Officer George Robinson was driving at approximately fifty miles per hour on State Highway 121 in Fannin County when he spotted MacQuarrie approaching him from the other direction of travel in the northbound lane. Robinson employed a Bee brand radar that was "calibrated before shift" to determine MacQuarrie's speed. Robinson, who had attended a radar certification class, explained, "When I see the vehicle, I will let it get to a certain distance from me before I turn the radar unit on." To obtain an accurate reading with such a Bee radar unit, it is

2

Robinson's practice to allow approximately a twenty-five to thirty-yard distance between the speeding vehicle and his patrol unit before using the radar unit to gauge the speed of other automobiles. After obtaining a reading of MacQuarrie's speed from the radar at that distance, Robinson stopped him "for speeding, for 77 miles in a 65-mile-an-hour zone."

Upon his approach to MacQuarrie, Robinson "could smell an odor of alcoholic beverage emitting on or about [MacQuarrie's] person," and "could tell that his eyes were bloodshot." MacQuarrie admitted that he had been drinking with friends. After this admission, Robinson contacted Trooper Ricardo Landeros, who conducted field-sobriety tests and arrested MacQuarrie for DWI.

The basis for MacQuarrie's motion to suppress rested on the claim that Robinson did not have reasonable suspicion to stop his automobile.

## II. Standard of Review

We review a trial court's decision on a motion to suppress evidence by applying a bifurcated standard of review. *Graves v. State*, 307 S.W.3d 483, 489 (Tex. App.—Texarkana 2010, pet. ref'd); *Rogers v. State*, 291 S.W.3d 148, 151 (Tex. App.—Texarkana 2009, pet. ref'd). While we defer to the trial court on its determination of historical facts and credibility, we review its application of the law and determination on questions not turning on credibility de novo. *Carmouche v. State*, 10 S.W.3d 323, 332 (Tex. Crim. App. 2000); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997); *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996);

3

*Graves*, 307 S.W.3d at 489. We also afford deference to a trial court's "application of law to fact questions," also known as "mixed questions of law and fact," if the resolution of those questions turns on an evaluation of credibility and demeanor. *Guzman*, 955 S.W.2d at 89. Since all the evidence is viewed in the light most favorable to the trial court's ruling, we are obligated to uphold the denial of MacQuarrie's motion to suppress if it was supported by the record and was correct under any theory of law applicable to the case. *Carmouche*, 10 S.W.3d at 327–28; *State v. Ballard*, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999).

## III. The Radar Evidence

An officer conducts a lawful stop when he has reasonable suspicion to believe that an individual is violating the law. *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). Reasonable suspicion exists if the officer has specific, articulable facts that when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person actually is, has been, or soon will be engaged in criminal activity. *Id.*; *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001).[1] This is an objective standard that disregards any subjective intent of the officer making the stop and looks solely to whether an objective basis for the stop exists. *Ford*, 158 S.W.3d at 492. "If an officer has a reasonable basis for suspecting that a person has committed a traffic offense, the officer may legally initiate a traffic stop." *Zervos v.*

---

[1] One might observe that Robinson may have entertained a reasonable suspicion that MacQuarrie was speeding; otherwise, he would likely not have had a reason to clock the speed of MacQuarrie's car by use of the radar apparatus. However, that was not developed at the suppression hearing.

4

*State*, 15 S.W.3d 146, 151 (Tex. App.—Texarkana 2000, pet. ref'd); *Graves*, 307 S.W.3d at 489; *see* TEX. CODE CRIM. PROC. ANN. art. 14.01(b) (West 2005).

Robinson's reasonable suspicion to conduct the traffic stop was based on the radar device's reading of the speed of MacQuarrie's vehicle, a speed detected to be excessive. However, MacQuarrie argues that the State failed to establish a sufficient predicate for admitting the results of the radar speed calculation device into evidence under *Kelly v. State*, 824 S.W.2d 568, 573 (Tex. Crim. App. 1992). In *Maysonet v. State*, we recited the *Kelly* factors, which require the proponent of evidence based on a scientific theory to show that (1) the underlying scientific theory is valid; (2) the technique applying the theory is valid; and (3) the technique was properly applied on the occasion in question. *Maysonet v. State*, 91 S.W.3d 365, 369 (Tex. App.—Texarkana 2002, pet. ref'd) (citing *Kelly*, 824 S.W.2d at 573). Because the scientific validity of radar "is well settled in both the relevant scientific community and in Texas jurisprudence," we stated in *Maysonet* that "we view the underlying scientific principles of radar as indisputable and valid as a matter of law." *Id.* at 371 (citing *Masquelette v. State*, 579 S.W.2d 478, 481 (Tex. Crim. App. [Panel Op. 1979) ("[T]he officer's testimony that he had been both trained to operate the radar set and to test it for accuracy is a sufficient predicate to support admission of radar evidence. Thus, . . . the State is not required to call expert witnesses to establish the accuracy of the radar.") (citations omitted)). However, we cautioned that "the State must still establish that officers applied a valid technique and that it was correctly applied on the particular occasion in question." *Id.*

Here, MacQuarrie complains that Robinson's technique in employing the radar device (maintaining that the distance between the two automobiles at the time the testing took place was too short to render an accurate reading), demonstrated that Robinson did not employ the proper technique in utilizing the device.   In support of this argument, MacQuarrie cites to a hypothetical given to Landeros:

> Q.     . . . . I want you to assume a hypothetical.   Okay?
>
> A.     Okay.
>
> Q.     You've got a vehicle coming towards you travelling 77 miles per hour.   Okay?
>
> A.     Okay.
>
> Q.     You're going 65 miles per hour.
>
> A.     Okay.
>
> Q.     Assume a distance between the two vehicles of 25 yards.
>
> . . . .
>
> Q.     Assume a distance between the two vehicles of 30 yards.
>
> A.     Before I even think, it's going to be on me.
>
> . . . .
>
> A.     . . . . But I don't personally check a car when it's that close.
>
> Q.     Why?

A.      Why?   Because when I see a car coming, it is -- it's from a half mile to -- a half a mile in front of me when I check its speed.   I don't check the speed right there right on top of me.

Q.      So, would it be appropriate to check the speed of a vehicle for radar purposes when it's right there on top of you?

A.      No.

Q.      Why?

A.      Because I need distance.

This hypothetical contradicted Robinson's statement that he was travelling at a speed of fifty miles per hour and that he waited for the vehicle to reach within twenty-five to thirty yards of his unit prior to checking its speed with the radar device at that distance.[2]   Additionally, Landeros' practice with regard to the use of a radar speed checking device was based upon the radar in his trooper patrol car, not shown to be the same type employed by Robinson.   Robinson testified that with respect to radar systems in the Fannin County Sheriff's Office patrol cars, "[d]ifferent vehicles had different radars."   Robinson's statement that he allows "25 to 30 yards" between his patrol car and a suspected speeding vehicle to obtain an accurate speed was specific to the Bee unit.

MacQuarrie next relies on an affidavit from Brandi Holcomb, a Bonham High School math teacher, who "was requested to calculate the amount of time that would elapse between two

---

[2]Instead, the trial court could have found that this hypothetical situation incorrectly assumed that the officer first spotted MacQuarrie's vehicle when it was twenty-five to thirty yards away, and could have disregarded Landeros' answer to the hypothetical.

vehicles meeting each other at varying distances and varying speeds." The results of her calculations suggested it would take less than half a second for MacQuarrie's vehicle to meet Robinson's vehicle, assuming the distance between the two vehicles was anywhere from twenty-five to thirty yards at the commencement of the speed test. Based upon Holcomb's calculations, MacQuarrie argues that it would have been impossible for Robinson to perceive MacQuarrie and deploy the radar device in under half a second. However, this calculation ignores Robinson's testimony that he recorded MacQuarrie's speed at a time when Robinson was twenty-five to thirty yards away from MacQuarrie's vehicle. That it took less than half a second for the two vehicles to then meet is of little consequence.

During the hearing, MacQuarrie's counsel asked Robinson, "[Y]ou observed no bad driving on his part?," to which Robinson replied, "The only thing was the speeding." Robinson testified that he was certified to operate the radar device, that the device had been properly calibrated, and that he employed the device properly by waiting for MacQuarrie's vehicle to reach within a certain distance to ensure accuracy with the Bee radar. We reiterated in *Maysonet* that "[t]he determination of the presence of reasonable suspicion is a factual one and is made by considering the totality of the circumstances at the time of the stop." *Maysonet*, 91 S.W.3d at 372. The trial judge is the exclusive trier of fact at a suppression hearing. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). The trial court could have found that the radar reading obtained by Robinson provided him with a factual basis to determine and/or confirm his suspicion that

8

MacQuarrie was speeding.   Therefore, as in *Maysonet*, we determine here that the trial court did not abuse its discretion by denying MacQuarrie's motion to suppress based on lack of reasonable suspicion.   *Maysonet*, 91 S.W.3d at 372; *see Mills v. State*, 99 S.W.3d 200, 202–03 (Tex. App.—Fort Worth 2002, pet. ref'd).   MacQuarrie's point of error is overruled.

## IV.    Conclusion

We affirm the trial court's judgment.


Bailey C. Moseley
Justice

Date Submitted:     September 14, 2011
Date Decided:       September 15, 2011

Do Not Publish

9