In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-11-00077-CR

                                                ______________________________

 

 

                           SCOTT PATRICK MACQUARRIE,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                            On Appeal from the County
Court at Law

                                                             Fannin County, Texas

                                                            Trial
Court No. 44271

 

                                                                   
                               

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                            Memorandum Opinion by Justice Moseley








                                                      MEMORANDUM OPINION

 

            Scott Patrick MacQuarrie, charged
with driving while intoxicated (DWI), requested a suppression hearing.  MacQuarrie alleged that the officer who had
initially pulled him over for speeding did not properly use the radar device
which showed that he was exceeding the speed limit.  Absent a showing of the proper use of the
radar device to gauge his speed as being excessive, MacQuarrie maintains, there
was no probable cause to have stopped and detained him.  After a hearing, the trial court refused to
suppress the evidence obtained after the traffic stop, prompting MacQuarrie to
enter a plea of guilty.  After being
sentenced to a penalty of six months in county jail with a $750.00 fine,
suspended upon his placement on community supervision for eighteen months,
MacQuarrie has appealed his conviction.  MacQuarrie’s
sole point on appeal is that the trial court erred in refusing to suppress the
evidence gained after the traffic stop.  We
affirm the trial court’s judgment. 

I.          Fact
Summary 

            Officer George Robinson was driving
at approximately fifty miles per hour on State Highway 121 in Fannin County
when he spotted MacQuarrie approaching him from the other direction of travel
in the northbound lane.  Robinson
employed a Bee brand radar that was “calibrated before shift” to determine
MacQuarrie’s speed.  Robinson, who had
attended a radar certification class, explained, “When I see the vehicle, I
will let it get to a certain distance from me before I turn the radar unit on.”
 To obtain an accurate reading with such
a Bee radar unit, it is Robinson’s practice to allow approximately a
twenty-five to thirty-yard distance between the speeding vehicle and his patrol
unit before using the radar unit to gauge the speed of other automobiles.  After obtaining a reading of MacQuarrie’s
speed from the radar at that distance, Robinson stopped him “for speeding, for
77 miles in a 65-mile-an-hour zone.”  

            Upon his approach to MacQuarrie,
Robinson “could smell an odor of alcoholic beverage emitting on or about
[MacQuarrie’s] person,” and “could tell that his eyes were bloodshot.”  MacQuarrie admitted that he had been drinking
with friends.  After this admission,
Robinson contacted Trooper Ricardo Landeros, who conducted field-sobriety tests
and arrested MacQuarrie for DWI.  

            The basis for MacQuarrie’s motion to
suppress rested on the claim that Robinson did not have reasonable suspicion to
stop his automobile. 

II.        Standard
of Review 

            We review a trial court’s decision
on a motion to suppress evidence by applying a bifurcated standard of
review.  Graves v. State, 307 S.W.3d 483, 489 (Tex. App.—Texarkana 2010,
pet. ref’d); Rogers v. State, 291
S.W.3d 148, 151 (Tex. App.—Texarkana 2009, pet. ref’d).  While we defer to the trial court on its
determination of historical facts and credibility, we review its application of
the law and determination on questions not turning on credibility de novo.  Carmouche v. State, 10 S.W.3d 323, 332
(Tex. Crim. App. 2000); Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim.
App. 1997); Villarreal v. State, 935
S.W.2d 134, 138 (Tex. Crim. App. 1996); Graves,
307 S.W.3d at 489.  We also afford
deference to a trial court’s “application of law to fact questions,” also known
as “mixed questions of law and fact,” if the resolution of those questions
turns on an evaluation of credibility and demeanor.  Guzman,
955 S.W.2d at 89.  Since all the evidence
is viewed in the light most favorable to the trial court’s ruling, we are
obligated to uphold the denial of MacQuarrie’s motion to suppress if it was
supported by the record and was correct under any theory of law applicable to
the case.  Carmouche, 10 S.W.3d at 327–28; State
v. Ballard, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999). 

III.       The
Radar Evidence

            An officer conducts a lawful stop
when he has reasonable suspicion to believe that an individual is violating the
law.  Ford
v. State, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).  Reasonable suspicion exists if the officer has
specific, articulable facts that when combined with rational inferences from
those facts, would lead him to reasonably conclude that a particular person
actually is, has been, or soon will be engaged in criminal activity.  Id.;
Garcia v. State, 43 S.W.3d 527, 530
(Tex. Crim. App. 2001).[1]  This is an objective standard that disregards
any subjective intent of the officer making the stop and looks solely to
whether an objective basis for the stop exists. 
Ford, 158 S.W.3d at 492.  “If an officer has a reasonable basis for
suspecting that a person has committed a traffic offense, the officer may
legally initiate a traffic stop.”  Zervos v. State, 15 S.W.3d 146, 151
(Tex. App.—Texarkana 2000, pet. ref’d); Graves,
307 S.W.3d at 489; see Tex. Code Crim. Proc. Ann. art.
14.01(b) (West 2005).  

            Robinson’s reasonable suspicion to
conduct the traffic stop was based on the radar device’s reading of the speed
of MacQuarrie’s vehicle, a speed detected to be excessive.  However, MacQuarrie argues that the State
failed to establish a sufficient predicate for admitting the results of the
radar speed calculation device into evidence under Kelly v. State, 824 S.W.2d 568, 573 (Tex. Crim. App. 1992).  In Maysonet
v. State, we recited the Kelly
factors, which require the proponent of evidence based on a scientific theory
to show that (1) the underlying scientific theory is valid; (2) the technique
applying the theory is valid; and (3) the technique was properly applied on the
occasion in question.  Maysonet v. State, 91 S.W.3d 365, 369
(Tex. App.—Texarkana 2002, pet. ref’d) (citing Kelly, 824 S.W.2d at 573). 
Because the scientific validity of radar “is well settled in both the
relevant scientific community and in Texas jurisprudence,” we stated in Maysonet that “we view the underlying
scientific principles of radar as indisputable and valid as a matter of law.”  Id. at
371 (citing Masquelette v. State, 579
S.W.2d 478, 481 (Tex. Crim. App. [Panel Op. 1979) (“[T]he officer’s testimony that
he had been both trained to operate the radar set and to test it for accuracy
is a sufficient predicate to support admission of radar evidence.  Thus, . . . the State is not required to call
expert witnesses to establish the accuracy of the radar.”) (citations
omitted)).  However, we cautioned that
“the State must still establish that officers applied a valid technique and
that it was correctly applied on the particular occasion in question.”  Id. 

            Here, MacQuarrie complains that
Robinson’s technique in employing the radar device (maintaining that the
distance between the two automobiles at the time the testing took place was too
short to render an accurate reading), demonstrated that Robinson did not employ
the proper technique in utilizing the device. 
In support of this argument, MacQuarrie cites to a hypothetical given to
Landeros:

            Q.        .
. . . I want you to assume a hypothetical. 
Okay?

 

            A.        Okay.


 

            Q.        You’ve
got a vehicle coming towards you travelling 77 miles per hour.  Okay?

 

            A.        Okay.


 

            Q.        You’re
going 65 miles per hour. 

 

            A.        Okay.


 

            Q.        Assume
a distance between the two vehicles of 25 yards.

 

            . . . . 

 

            Q.        Assume
a distance between the two vehicles of 30 yards. 

 

            A.        Before
I even think, it’s going to be on me. 

 

            . . . . 

 

            A.        .
. . . But I don’t personally check a car when it’s that close.

 

            Q.        Why?

 

            A.        Why?  Because when I see a car coming, it is -- it’s
from a half mile to -- a half a mile in front of me when I check its
speed.  I don’t check the speed right
there right on top of me. 

 

            Q.        So,
would it be appropriate to check the speed of a vehicle for radar purposes when
it’s right there on top of you?

 

            A.        No.


 

            Q.        Why?

 

            A.        Because
I need distance. 

 

This
hypothetical contradicted Robinson’s statement that he was travelling at a speed
of fifty miles per hour and that he waited for the vehicle to reach within
twenty-five to thirty yards of his unit prior to checking its speed with the
radar device at that distance.[2]  Additionally, Landeros’ practice with regard
to the use of a radar speed checking device was based upon the radar in his
trooper patrol car, not shown to be the same type employed by Robinson.  Robinson testified that with respect to radar
systems in the Fannin County Sheriff’s Office patrol cars, “[d]ifferent
vehicles had different radars.” 
Robinson’s statement that he allows “25 to 30 yards” between his patrol
car and a suspected speeding vehicle to obtain an accurate speed was specific to
the Bee unit. 

            MacQuarrie next relies on an
affidavit from Brandi Holcomb, a Bonham High School math teacher, who “was
requested to calculate the amount of time that would elapse between two
vehicles meeting each other at varying distances and varying speeds.”  The results of her calculations suggested it
would take less than half a second for MacQuarrie’s vehicle to meet Robinson’s
vehicle, assuming the distance between the two vehicles was anywhere from
twenty-five to thirty yards at the commencement of the speed test.  Based upon Holcomb’s calculations, MacQuarrie
argues that it would have been impossible for Robinson to perceive MacQuarrie
and deploy the radar device in under half a second.  However, this calculation ignores Robinson’s
testimony that he recorded MacQuarrie’s speed at a time when Robinson was
twenty-five to thirty yards away from MacQuarrie’s vehicle.  That it took less than half a second for the
two vehicles to then meet is of little consequence. 

            During the hearing, MacQuarrie’s
counsel asked Robinson, “[Y]ou observed no bad driving on his part?,” to which
Robinson replied, “The only thing was the speeding.”  Robinson testified that he was certified to
operate the radar device, that the device had been properly calibrated, and
that he employed the device properly by waiting for MacQuarrie’s vehicle to
reach within a certain distance to ensure accuracy with the Bee radar.  We reiterated in Maysonet that “[t]he determination of the presence of reasonable
suspicion is a factual one and is made by considering the totality of the
circumstances at the time of the stop.”  Maysonet, 91 S.W.3d at 372.  The trial judge is the exclusive trier of
fact at a suppression hearing.  State v. Ross, 32 S.W.3d 853, 855 (Tex.
Crim. App. 2000).  The trial court could
have found that the radar reading obtained by Robinson provided him with a
factual basis to determine and/or confirm his suspicion that MacQuarrie was
speeding.  Therefore, as in Maysonet, we determine here that the
trial court did not abuse its discretion by denying MacQuarrie’s motion to
suppress based on lack of reasonable suspicion. 
Maysonet, 91 S.W.3d at 372; see Mills v. State, 99 S.W.3d 200, 202–03
(Tex. App.—Fort Worth 2002, pet. ref’d). 
MacQuarrie’s point of error is overruled. 

IV.       Conclusion


            We affirm the trial court’s
judgment. 

 

 

 

                                                                        Bailey
C. Moseley

                                                                        Justice

 

Date
Submitted:          September 14, 2011

Date
Decided:             September 15, 2011

 

Do Not
Publish











[1]One
might observe that Robinson may have entertained a reasonable suspicion that
MacQuarrie was speeding; otherwise, he would likely not have had a reason to
clock the speed of MacQuarrie’s car by use of the radar apparatus.  However, that was not developed at the
suppression hearing.





[2]Instead,
the trial court could have found that this hypothetical situation incorrectly assumed
that the officer first spotted MacQuarrie’s vehicle when it was twenty-five to
thirty yards away, and could have disregarded Landeros’ answer to the
hypothetical.