

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-09-00225-CR

_____

TIMOTHY LEE ROBINSON, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 276th Judicial District Court
Titus County, Texas
Trial Court No. CR16,079

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter

MEMORANDUM OPINION

Is it reasonable to conclude that a driver must display a signal of an intention to proceed through the intersection of Ninth Street and Margaret Drive in Mount Pleasant? This question becomes important in considering the conviction of Timothy Lee Robinson for possession of more than 200 grams of cocaine. His punishment was enhanced by a prior felony conviction, and the jury assessed punishment at twenty years' imprisonment. Robinson raises four issues on appeal.[1] Although we conclude the trial court did not abuse its discretion in denying Robinson's motion to suppress evidence and conclude the evidence is sufficient, we also find the trial court erred in failing to instruct the jury pursuant to Article 38.23 of the Texas Code of Criminal Procedure. Finding the error resulted in harm, we reverse the conviction and remand to the trial court for a new trial.

I.      Facts

Officer Cesar Muñoz, a police officer with the Mount Pleasant Police Department, testified he received an anonymous call at 6:00 a.m. The caller advised Muñoz that Robinson was "headed from Dallas, Texas, back to Mount Pleasant with a large amount of cocaine." The caller stated he believed Robinson was "headed back to his residence, which, at the time, [the police officers]

---

[1]In his third point of error, Robinson complains that the trial court erred in failing to issue findings of fact and conclusions of law on his motion to suppress Robinson's confession. When a trial court fails to enter findings of fact required by TEX. CODE CRIM. PROC. ANN. art. 38.22 (Vernon 2005), the proper procedure "is for the court of appeals to abate the appeal and order the trial court to make the findings of fact." *Berry v. State*, 995 S.W.2d 699, 701 (Tex. Crim. App. 1999). This Court abated the appeal and remanded this case to the trial court to enter findings of fact and conclusions of law. Because the record has now been supplemented with findings of fact and conclusions of law on the motion to suppress, Robinson's third point of error is overruled as moot.

2

knew to be 511 Margaret Drive." Muñoz observed a vehicle being driven by Robinson make a turn at the intersection of Ninth Street and Margaret Drive without signaling. When Muñoz activated his overhead lights, Robinson failed to immediately stop and proceeded several blocks along Margaret Drive to his residence. The odor of marihuana was emanating from the car. The police requested and obtained consent to search the car and found residual amounts of marihuana and a hollowed-out cigar in the car. After searching the car, the police found 294.64 grams of cocaine in a gallon-size plastic bag under the car near the passenger side. Robinson claimed possession of the drugs at the scene and later signed a written confession.

Robinson filed a motion to suppress evidence alleging the police officer lacked reasonable suspicion to detain him. After a hearing, the trial court denied the motion to suppress. Robinson requested, during the charge conference at trial, that the trial court reconsider its ruling on the motion to suppress and requested the jury be instructed pursuant to Article 38.23 of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 38.23 (Vernon 2005). The trial court denied the renewed motion to suppress and denied the requested jury instruction. A jury found Robinson guilty and assessed a punishment of twenty years' imprisonment.

## II. The Trial Court Did Not Abuse Its Discretion in Denying the Motion to Suppress

Robinson argues, in his first point of error, that the trial court abused its discretion in denying his motion to suppress. According to Robinson, the trial court erred in concluding Muñoz observed Robinson commit a traffic violation. Robinson argues he was not required to

3

signal at the intersection of Ninth Street and Margaret Drive because Ninth Street merges into Margaret Drive.

We review the trial court's decision on a motion to suppress evidence by applying a bifurcated standard of review deferring to the trial court's determination of historical facts that depend on credibility, but review de novo the trial court's application of the law. *Wiede v. State*, 214 S.W.3d 17, 25 (Tex. Crim. App. 2007); *see Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). The trial court's evidentiary ruling "will be upheld on appeal if it is correct on any theory of law that finds support in the record." *Gonzalez v. State*, 195 S.W.3d 114, 126 (Tex. Crim. App. 2006); *see Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990). Generally, we review de novo determinations of probable cause or reasonable suspicion after granting deference to the trial court's determination of historical facts. *Guzman*, 955 S.W.2d at 87; *see Crain v. State*, 315 S.W.3d 43, 49 (Tex. Crim. App. 2010).

The defendant alleging a Fourth Amendment violation bears the burden of producing some evidence that rebuts the presumption of proper police conduct. *Amador v. State*, 221 S.W.3d 666, 672 (Tex. Crim. App. 2007). "A defendant meets his initial burden of proof by establishing that a search or seizure occurred without a warrant." *Id.* The burden then shifts to the State to prove that the search or seizure was nonetheless reasonable under the totality of the circumstances. *Id.* at 672–73.

A law enforcement officer may lawfully stop and detain a person for a traffic violation

4

committed in the presence of the officer. *Garcia v. State*, 827 S.W.2d 937, 944 (Tex. Crim. App. 1992); *Zervos v. State*, 15 S.W.3d 146, 151 (Tex. App.—Texarkana 2000, pet. ref'd). "A routine traffic stop resembles an investigative detention." *State v. Cardenas*, 36 S.W.3d 243, 246 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd). The United States Supreme Court in *Terry v. Ohio* established the test for investigative detentions. *Terry* established a two-pronged test for investigative detentions. *Terry v. Ohio*, 392 U.S. 1, 19–20 (1968). To determine the reasonableness of an investigative detention, the court must inquire: "(1) whether the officer's action was justified at its inception; and, (2) whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Davis v. State*, 947 S.W.2d 240, 242 (Tex. Crim. App. 1997); *see Terry*, 392 U.S. at 19–20.

Robinson only challenges the first prong of the test. "Under the first prong, 'the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" *Id.* (quoting *Terry*, 392 U.S. at 21). These facts must be more than a mere hunch or suspicion. *Id.* at 244. Whether the officer's suspicion was reasonable is evaluated based on "an objective standard that disregards any subjective intent of the officer making the stop and looks solely to whether an objective basis for the stop exists." *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). The specific, articulable facts, along with rational inferences from those facts, must allow the officer to reasonably conclude the person detained actually is, has been, or soon will be engaged in criminal

5

activity. *United States v. Sokolow*, 490 U.S. 1, 10 (1989).

The Texas Court of Criminal Appeals has noted the State "need not establish with absolute certainty that a crime has occurred in order to show reasonable suspicion." *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001). The court, however, cautioned that appellate courts should not defer to a police officer's legal conclusions. *Id*. at 531. Since *Garcia*, several Texas courts of appeals have noted an officer's incorrect understanding of the law does not give rise to a reasonable suspicion. *Fowler v. State*, 266 S.W.3d 498 (Tex. App.—Fort Worth 2008, pet. ref'd); *Goudeau v. State*, 209 S.W.3d 713, 716 (Tex. App.—Houston [14th Dist.] 2006, no pet.); *see United States v. Miller*, 146 F.3d 274, 279 (5th Cir. 1998). The Third Circuit has explained this distinction succinctly as follows:

> [M]istakes of fact are rarely fatal to an officer's reasonable, articulable belief that an individual was violating a traffic ordinance at the time of a stop, many of our sister circuits have held that mistakes of law -- even reasonable ones -- can render a traffic stop "unreasonable" under the Fourth Amendment.

*United States v. Delfin-Colina*, 464 F.3d 392, 398 (3d Cir. 2006). We believe the Third Circuit's holding explains the distinction made by the Texas Court of Criminal Appeals in *Garcia*. *See Madden v. State*, 242 S.W.3d 504, 508 n.7 (Tex. Crim. App. 2007) (noting factual issue was not whether defendant was actually speeding, but whether officer had reasonable belief defendant was speeding). Based on the facts presented, does a correct interpretation of the law allow a police officer to reasonably conclude that Robinson had committed a criminal act?

Officer Muñoz testified, at the hearing on the motion to suppress, he observed the vehicle

6

Robinson was driving "failed to make a -- use their turn signal at that time when it turned onto Margaret from Ninth." The Texas Transportation Code provides "[a]n operator shall use the signal authorized by Section 545.106 to indicate an intention to turn, change lanes, or start from a parked position." TEX. TRANSP. CODE ANN. § 545.104(a) (Vernon 1999). Section 545.103 provides "[a]n operator may not turn the vehicle to enter a private road or driveway, otherwise turn the vehicle from a direct course, or move right or left on a roadway unless movement can be made safely." TEX. TRANSP. CODE ANN. § 545.103 (Vernon 1999). The disputed issue in this case is whether Robinson made a turn.[2]

The Texas Court of Criminal Appeals has recently clarified what constitutes a turn under the Texas Transportation Code. The Texas Court of Criminal Appeals held: "[u]nder the plain language of the Transportation Code, all movements right or left on the roadway must be made safely, but only some--turns, lane changes, or starts from a parked position--require a signal." *Mahaffey v. State*, 316 S.W.3d 633, 643 (Tex. Crim. App. 2010). In *Mahaffey*, the Texas Court of Criminal Appeals concluded that the defendant's movement from right to left as two lanes merged did not require the defendant to use a turn signal. *Id*. Noting the Texas Transportation Code

---

[2]In the alternative, the State argues Robinson violated Section 71.030 of the Municipal Ordinances of the City of Mount Pleasant. MOUNT PLEASANT, TEX., CODE OF ORDINANCES § 71.030 (current through Sept. 21, 2010), *available at* http://www.amlegal.com. Section 71.030 provides "When any other traffic may be affected by such movement, no person shall turn any vehicle without giving a signal of his or her intention to turn right or left . . ." *Id.* Similar to the Transportation Code, the Municipal Ordinances do not define the meaning of the word "turn." *Id.*; *see* MOUNT PLEASANT, TEX., CODE OF ORDINANCES § 70.01 (current through Sept. 21, 2010), *available at* http://www.amlegal.com. The State has failed to convince this Court that the City of Mount Pleasant intended its municipal ordinances to have a definition of "turn" different from the Texas Transportation Code. The violation of both ordinances depends on the meaning of "turn."

does not define the word "turn," the court concluded the definition of "turn" does not include movements to the right or left which are "simply following the 'direct course' of the road and of the traffic on that winding road." *Id*. at 638–39. It is only when an operator "turns right or left out of the 'direct course' of the road that he must signal his intention." *Id*. at 639.

We note *Mahaffey* was decided after the trial in this case. The defense, however, relied upon the Beaumont Court of Appeals' decision in *Trahan v. State*, 16 S.W.3d 146, 147 (Tex. App.—Beaumont 2000, no pet.), at trial. Similar to *Mahaffey*, the Beaumont court held "the code does not equate moving right or left to a 'turn.'" *Id.* (concluding defendant not required to signal exit from freeway). The State, citing *Mahaffey*, 316 S.W.3d at 643, notes "the Court of Criminal Appeals has approved of [*Trahan*'s reasoning] to a limited extent, not applicable here." Other than explaining *Mahaffey* as "holding that a 'merge' is not a 'turn' that requires a signal under the Transportation Code," the State does not explain why the reasoning of *Mahaffey* is not applicable. Although the facts of *Mahaffey* are distinguishable, the clarification of the meaning of the term "turn" is applicable to the facts of this case.

The State argues Robinson was required to signal a turn because the alleged traffic violation occurred at an intersection. The Texas Transportation Code defines an intersection as "the common area at the junction of two highways, other than the junction of an alley and a highway." TEX. TRANSP. CODE ANN. § 541.303 (Vernon 1999). Robinson argues neither Ninth Street nor Margaret Drive qualify as a highway. The Texas Transportation Code defines a

8

"highway or street" as "the width between the boundary lines of a publicly maintained way any part of which is open to the public for vehicular travel" and defines "alley" as "a street that: (A) is not used primarily for through traffic; and (B) provides access to rear entrances of buildings or lots along a street." TEX. TRANSP. CODE ANN. § 541.302 (Vernon 1999). Because the record establishes both Ninth Street and Margaret Drive are streets primarily used for vehicular travel and do not provide access to the rear entrances of buildings or lots, the junction of Ninth Street and Margaret Drive qualifies as an intersection.

The fact that the alleged traffic violation occurred at the junction of Ninth Street and Margaret Drive, however, is not determinative. Section 545.101 only requires an operator of a vehicle to signal if he or she is making a turn. If the operator is proceeding straight, or following the direct course of the road, a signal is not required. The fact that the street name of the road may change is not necessarily determinative of whether an operator is following the direct course of the road. It is the course of the road and traffic that are determinative. The Texas Transportation Code does not require an operator proceeding straight through an intersection to signal.[3] When a road curves, *Mahaffey* explains that an operator following the direct course of the road is not required to signal. *Mahaffey*, 316 S.W.3d at 639. The issue is whether the traffic of Ninth Street **merges** onto Margaret or whether the traffic from Ninth Street **turns** onto Margaret.

Officer Muñoz's testimony can be interpreted as opining that traffic on Ninth Street does

---

[3]Similarly, the Municipal Ordinances of Mount Pleasant do not require an operator proceeding straight through an intersection to signal. MOUNT PLEASANT, TEX., CODE OF ORDINANCES §§ 70.01, 71.030 (current through Sept. 21, 2010), *available at* http://www.amlegal.com.

9

not merge onto Margaret. Muñoz described the intersection of Ninth and Margaret as follows:

> Where the road actually Ys, there is a dead end road to the left, but it is a roadway with residences on it, and there's the road to the right, which Margaret continues onto. Mr. Robinson approached Margaret and failed to turn -- failed to use a turn signal to indicate whether he was turning to the right or to the left at that intersection.

At the suppression hearing, the defense showed Muñoz a map, which Muñoz described as incorrect. When asked, "[D]oes Ninth Street curve into Margaret Drive?" Muñoz responded, "Yes, it does, but the way that indicates is incorrect to the actual way the street is. That's incorrect." Muñoz admitted there were not any traffic signs at the intersection, but testified, "[Ninth Street] doesn't continue onto Margaret though there is an intersection."

At trial,[4] Muñoz testified Robinson failed to signal a turn at the intersection of Ninth and Margaret in Mount Pleasant, Texas. Muñoz admitted East Ninth Street and Margaret Drive merge at their intersection. When asked whether there were any traffic signs of any kind at the intersection, Muñoz responded, "I don't believe. It's just a -- it's an intersection."

The record also contains evidence that the traffic from Ninth Street does merge onto Margaret Drive. The defense introduced a map which suggests Ninth Street merges with Margaret Drive. The defense exhibit appears to be photocopied from a commercial atlas.

---

[4]In reviewing a trial court's decision concerning a motion to suppress, we generally consider only evidence adduced at the suppression hearing, since the ruling was based on that evidence, rather than evidence introduced later in the trial. *Rachal v. State*, 917 S.W.2d 799, 809 (Tex. Crim. App. 1996). When the legality of the seizure is relitigated at trial, however, consideration of relevant trial testimony is appropriate in our review. *Id*. In this case, the issue was relitigated at trial and Robinson requested the trial court to reconsider its prior ruling. Therefore, we will consider the testimony introduced at trial in our analysis.

Muñoz testified the map, introduced by the defense and admitted into evidence, was incorrect.[5]

According to Muñoz, the defense exhibit was incorrect "[b]ecause in [the defense exhibit], East Eighth does not run into Margaret, and then you've got East Ninth, and they run parallel to each other." Lakeshia Williams, Robinson's girlfriend, described the intersection on redirect examination as follows:

> Q     [Defense Counsel]    Is there a traffic sign of any kind to your recollection at the intersection - - or what Detective Muñoz considers to be the intersection of Ninth and Margaret?
>
> A     [Williams]    No, sir.  It's just a curve.
>
> Q     Ninth Street curves into Margaret?
>
> A     Yes, sir.
>
> Q     Are there some houses on the left as you're turning onto Margaret?
>
> A     Yes, sir.  It goes like this.  If you turn left, you have to put a signal on. You turn right, you just going around the corner.
>
> Q     So it's a dead end if you go left, is that right?
>
> A     It's a dead end if you go left, and then go up that way if you don't turn off.
>
> Q     But ninth just curves around?
>
> A     Just curves around.
>
> Q     There's no stop sign or yield sign?

---

[5]During direct examination, Muñoz refers to a diagram which shows Eighth Street running parallel to Ninth Street. The State did not tender this diagram for admission into evidence, and the record on appeal does not contain any diagram introduced by the State.

A     No, sir.

On recross-examination, Williams admitted she was not a certified police officer and disclaimed being "fully knowledgeable on all the traffic offenses."

The relevant inquiry is not Robinson's guilt or innocence of a violation of the Texas Transportation Code, but the reasonableness of the officer's suspicion that Robinson had violated it. *See Madden*, 242 S.W.3d at 508 n.7 (noting factual issue not whether defendant was actually speeding, but whether officer had reasonable belief defendant was speeding). The trial court could have determined, based on Muñoz's testimony, that a reasonable officer would have reasonably, even if mistakenly, believed a turn signal was required because either (1) Robinson turned out of the "direct course" of the road, or (2) there was no "direct course" of the road at the intersection of Ninth Street and Margaret Drive. While the record contains strong evidence that Ninth Street and Margaret Drive merged and that Robinson merely followed the direct course of the road, the evidence does not conclusively establish a reasonable officer would have concluded Ninth Street and Margaret Drive merged and Robinson merely followed the direct course of the road.[6] We are required to afford "almost total deference to a trial court's determination of the historical facts." *Guzman*, 955 S.W.2d at 89. We are unable to conclude the trial court erred in denying Robinson's motion to suppress.

## III.    The Evidence Is Sufficient

---

[6]Muñoz's police vehicle was not equipped with any recording device. The parties have not directed this Court to where in the record there is a video or picture of the intersection.

Robinson argues, in his fourth point of error, the evidence is insufficient because there are insufficient affirmative links. When contraband is not found on the accused's person or in the exclusive possession of the accused, the evidence must affirmatively link[7] the accused to the contraband. *Jones v. State*, 963 S.W.2d 826, 830 (Tex. App.—Texarkana 1998, pet. ref'd). Robinson argues the evidence merely established he was in the general vicinity of the contraband. According to Robinson, he confessed "simply to keep his brother and brother's girlfriend out of trouble."

The defendant's mere presence at the location where drugs are found is insufficient, by itself, to establish actual care, custody, or control of those drugs. *Evans*, 202 S.W.3d at 162. "The 'affirmative links rule' is designed to protect the innocent bystander from conviction based solely upon his fortuitous proximity to someone else's drugs." *Poindexter v. State*, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005). Under the affirmative links rule, "when the accused is not in exclusive possession of the place where the substance is found, it cannot be concluded that the accused had knowledge of and control over the contraband unless there are additional independent facts and circumstances which affirmatively link the accused to the contraband." *Id.* (quoting *Deshong v. State*, 625 S.W.2d 327, 329 (Tex. Crim. App. 1981)). The following is a

---

[7]The Texas Court of Criminal Appeals acknowledged, in a discussion of the "affirmative links" test, that the term "affirmative" adds nothing to the plain meaning of "link." When the term "link" is utilized, it is clear that evidence of drug possession is judged by the same standard as all other evidence. *Evans v. State*, 202 S.W.3d 158, 162 (Tex. Crim. App. 2006). We will continue to use the nomenclature of "affirmative links" in the interests of tradition and convenience.

nonexclusive list of factors that have been found to be sufficient, either singly or in combination, to establish a person's possession of contraband:

> (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) whether the contraband was in close proximity to, or accessible by, the defendant; (4) whether the place where the contraband was found was enclosed; (5) whether the defendant was under the influence of narcotics when arrested; (6) whether the defendant possessed other contraband or narcotics when arrested; (7) whether the defendant made incriminating statements when arrested; (8) whether the defendant attempted to flee; (9) whether the defendant made furtive gestures; (10) whether there was an odor of contraband present at the scene; (11) whether other contraband or drug paraphernalia were present; (12) whether the defendant owned or had a right to possess the place where the contraband was found; (13) whether the defendant was found with a large amount of cash; (14) whether the defendant possessed weapons; and (15) whether conduct of the defendant indicated a consciousness of guilt.

*Evans*, 202 S.W.3d at 162 n.12; *Hargrove v. State*, 211 S.W.3d 379, 385–86 (Tex. App.—San Antonio 2006, pet. ref'd); *see Jones*, 963 S.W.2d at 830.

The State presented evidence tending to link Robinson to the contraband. The contraband was found on the ground at Robinson's residence. Robinson had been operating the vehicle under which the contraband was discovered.[8] The police had received an anonymous tip that Robinson would be traveling back to his residence with a large quantity of drugs. Robinson did not immediately stop when Muñoz activated his overhead lights. When Robinson eventually stopped the car, he exited the vehicle and moved toward the house until commanded to stop by the police. After the police discovered the contraband, Robinson orally confessed and later signed a written confession.

---

[8]The car being driven by Robinson was a rental car.

14

The links to the contraband do not need to exclude every other reasonable hypothesis except the defendant's guilt. *Brown v. State*, 911 S.W.2d 744, 748 (Tex. Crim. App. 1995). "The number of factors present is not as important as the degree to which the factors tend to affirmatively link the accused to the contraband." *Williams v. State*, 906 S.W.2d 58, 65 (Tex. App.—Tyler 1995, pet. ref'd). The record in this case is sufficient to link Robinson to the contraband. Robinson's fourth point of error is overruled.

**IV.     The Trial Court Erred in Refusing to Instruct the Jury Concerning Article 38.23**

Robinson's remaining issue challenges the trial court's refusal to instruct the jury pursuant to Article 38.23 of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 38.23. Defense counsel objected to the charge and submitted a requested special instruction in writing to the trial court. According to Robinson, a fact issue exists concerning whether Robinson had committed a traffic offense.

The Texas Code of Criminal Procedure requires a jury instruction if the evidence raises an issue concerning whether evidence is the result of an unlawful search. Article 38.23(a) provides:

> No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.
>
> In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was

15

obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

*Id.* An instruction pursuant to Article 38.23 is mandatory when there is a factual dispute regarding the legality of the search. *Pickens v. State*, 165 S.W.3d 675, 680 (Tex. Crim. App. 2005); *Brooks v. State*, 642 S.W.2d 791, 799 (Tex. Crim. App. [Panel Op.] 1982); *Malone v. State*, 163 S.W.3d 785, 802 (Tex. App.—Texarkana 2005, pet. ref'd). To be entitled to the submission of a jury instruction under Article 38.23(a), a defendant must establish:

(1)     The evidence heard by the jury must raise an issue of fact;
(2)     The evidence on that fact must be affirmatively contested; and
(3)     That contested factual issue must be material to the lawfulness of the challenged conduct in obtaining the evidence.

*Madden*, 242 S.W.3d at 510 (citations omitted).

In this case, a fact issue existed concerning whether a reasonable officer would have concluded Robinson's movement deviated from the direct course of the road and of the traffic. The record contains evidence that at the intersection at issue, Ninth Street and Margaret Drive are indistinguishable from a single road except for the assigned names. The map introduced by the defense strongly suggests Robinson followed the direct course of traffic on Ninth Street merging onto Margaret Drive. Although Muñoz challenged the defense exhibit as incorrect, he did not testify, at trial, that the exhibit was incorrect concerning the intersection of Ninth Street and

16

Margaret Drive.   At trial,[9] Muñoz merely challenged the accuracy of the exhibit as it related to

the depiction of Eighth Street.   Williams' testimony can be interpreted as evidence that traffic on

Ninth Street merges onto Margaret Drive.

We emphasize the disputed issue of historical fact is not Robinson's guilt or innocence of a

violation of the Texas Transportation Code, but the reasonableness of the officer's suspicion that

Robinson had violated it.   In *Madden*, the Texas Court of Criminal Appeals approved of the

following instruction:

> You are instructed that no evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

> You are further instructed that our law permits the stop and detention of a motorist by a peace officer without a warrant when the officer has reasonable suspicion to believe that a traffic offense has been committed.

> By the term "reasonable suspicion," as used herein, is meant specific articulable facts which, when taken together with rational inferences from those facts, would warrant a man of reasonable caution to believe that an offense has been or is being committed.   Speeding is an offense against the law.

> Therefore, bearing in mind these instructions, if you find from the evidence that, on the occasion in question, [the police officer] did not have a reasonable suspicion to believe that [Appellant] was driving at a speed greater than 55 miles per hour on a portion of the highway with a posted speed limit of 55 miles per hour immediately prior to the stop, or if you have a reasonable doubt thereof, you will disregard any and all evidence obtained as a result of [Appellant's] detention by the officer and

---

[9]We note at the suppression hearing, Muñoz challenged the accuracy of the defense map concerning the intersection of Ninth Street and Margaret Drive.   Because the exhibit at the suppression hearing was not introduced, the record does not indicate whether the exhibit referred to in the suppression hearing was the same as the exhibit introduced at trial.

you will not consider such evidence for any purpose whatsoever.

However, if you find from the evidence that, on the occasion in question, [the police officer] did have a reasonable suspicion to believe that [Appellant] was driving at a speed greater than 55 miles per hour on a portion of the highway with a posted speed limit of 55 miles per hour immediately prior to the stop, then you may consider the evidence obtained by the officer as a result of the detention.

*Id.* at 508 n.7.

The instruction focuses the jury on the disputed issue of fact within the context of the

relevant legal background. The Texas Court of Criminal Appeals described this instruction as

admirable in that it specifically directs the jury's attention to the one historical fact--[the police officer]'s reasonable belief or "suspicion" that appellant was going faster than 55 m.p.h.--in dispute and tells the jury to decide this fact. The factual issue for the jury is not whether appellant *was* speeding, the issue is whether [the police officer] had a reasonable belief that he was speeding. Even police officers may be mistaken about an historical fact such as "speeding," as long as that mistake was not unreasonable. Of course, evidence that appellant was not, in fact, speeding is highly probative of whether [the police officer] was reasonable in thinking that he was speeding. The trial court's instructions correctly set out the proper factual issue for the jury to decide. The rest of the instruction simply gives the legal background for the issue and explains why this is such an important fact to decide.

*Id*. Thus, the disputed issue of historical fact is not whether a traffic violation occurred, but

whether the officer had a reasonable suspicion to believe that Robinson failed to give a signal to

turn out of the direct course of traffic. Because there is a fact issue on reasonableness of the

officer's suspicion Robinson had violated the Texas Transportation Code, in this respect Robinson

has met the first prong to be entitled to the submission of a jury instruction.

The factual dispute required to trigger an Article 38.23(a) instruction can be raised "only

18

by affirmative evidence, not by mere cross-examination questions or argument." *Oursbourn v. State*, 259 S.W.3d 159, 177 (Tex. Crim. App. 2008). The testimony of Williams provides affirmative evidence that Ninth Street merges onto Margaret Drive. The second prong has been met.

Additionally, the contested factual issue must be material to the lawfulness of the challenged conduct in obtaining the evidence. "The defendant must offer evidence that, if credited, would create a reasonable doubt as to a specific factual matter essential to the voluntariness of the statement." *Id.* Muñoz's sole justification for the detention was that he had observed Robinson commit a traffic offense by failing to signal a turn. If Ninth Street and Margaret Drive merged, Robinson was not required to signal the turn. Under this scenario, the act observed by Muñoz was not a traffic offense and Muñoz may not have been reasonable in believing that Robinson committed a traffic violation. Reasonable suspicion existed only if an officer would have reasonably, even if mistakenly, believed Ninth Street did not merge with Margaret Drive. The contested factual issue is clearly material to the lawfulness of the detention. Robinson was entitled to a jury instruction on Article 38.23. The trial court erred in denying Robinson's request for a jury instruction pursuant to Article 38.23.

When error occurs in failing to properly instruct the jury, our review of the charge is under the *Almanza* standard. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g). An erroneous or incomplete jury charge does not result in automatic reversal of the

19

conviction or punishment. *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994). Instead, the appellate court "must determine whether sufficient harm resulted from the error to require reversal." *Id.* at 731–32; *Almanza*, 686 S.W.2d at 171. The level of harm an appellant must demonstrate as having resulted from the erroneous jury instruction depends on whether the appellant properly objected to the error at trial. *Abdnor*, 871 S.W.2d at 732. When the appellant properly objected at trial, reversal is required if the error is "calculated to injure the rights of defendant"—the appellant need only demonstrate "some harm" on appeal. *Id.*; *see also Almanza*, 686 S.W.2d at 171. If the error was not preserved, reversal is not required unless "the error is so egregious and created such harm that he 'has not had a fair and impartial trial'—in short 'egregious harm.'" *Almanza*, 686 S.W.2d at 171; *see Rudd v. State*, 921 S.W.2d 370, 373 (Tex. App.—Texarkana 1996, pet. ref'd). "Egregious harm" consists of errors affecting the very basis of the case or that deprive the defendant of a valuable right, vitally affect a defensive theory, or make the case for conviction or punishment clearly and significantly more persuasive. *Saunders v. State*, 817 S.W.2d 688, 692 (Tex. Crim. App. 1991); *Boones v. State*, 170 S.W.3d 653, 660 (Tex. App.—Texarkana 2005, no pet.).

As noted above, Robinson objected to the charge and provided the trial court with a written proposed charge. Robinson's proposed jury instruction explained the circumstances when a signal was required and then asked the jury to determine whether Robinson "was required to use a turn signal" at the intersection. That instruction was incorrect as it directed the jury to consider

20

the wrong question:  whether the intersection required a signal, rather than whether the officer could have reasonably believed it did.

The point of this instruction is to determine the admissibility of the evidence found as a result of the search of the vehicle, not whether Robinson was guilty of failing to give a turn signal. Theoretically, Robinson could be not guilty of the traffic offense, but the evidence found as a result of the search might still be admissible if the officer has reasonable suspicion that the facts he observed constituted a traffic offense.  The historical fact upon which Robinson was entitled to an instruction was whether an officer would have reasonably, even if mistakenly, believed Ninth Street did not merge with Margaret Drive.

When a defendant fails to present a proper requested instruction, any error in the charge "should be reviewed only for 'egregious harm' under *Almanza*."  *Madden*, 242 S.W.3d at 513; *see Oursbourn*, 259 S.W.3d at 181 (trial court must instruct jury on voluntariness of defendant's statement when fact issue raised).

We conclude Robinson has demonstrated egregious harm.  The configuration of this intersection (which determined if a signal was necessary) was hotly disputed.  That determination is very relevant on whether the officer could reasonably believe such a signal was required.  In the absence of an Article 38.23 instruction, no mechanism existed for the jury to consider the legality of the stop of the vehicle and the State was relieved of establishing that the detention was reasonable.  *See Oursbourn v. State*, 288 S.W.3d 65, 70 (Tex. App.—Houston [1st Dist.] 2009, no

21

pet.) (finding egregious harm on remand because State was relieved of burden of establishing voluntariness of statement). The jury was unaware of the effect of an illegal detention and unaware that any evidence obtained as a result of an illegal detention could not be considered for any purpose.[10] We conclude that the omission of the Article 38.23 instruction vitally affected a defensive theory and that Robinson suffered egregious harm.

For the reasons stated, we reverse Robinson's conviction and remand for further proceedings consistent with this opinion.

Jack Carter
Justice

Date Submitted:     November 19, 2010
Date Decided:      January 13, 2011

---

[10]Evidence tainted by unlawful police action is traditionally barred as fruit of the poisonous tree. *See Segura v. United States*, 468 U.S. 796, 804 (1984); *Wong Sun v. United States*, 371 U.S. 471 (1963). Assuming the detention was illegal, there is a clear causal connection between the detention and the discovery of the drugs. The State does not allege that the discovery of the drugs or Robinson's subsequent confession was sufficiently attenuated from the alleged illegal detention to purge the taint of the alleged illegal detention. *Brown v. Illinois*, 422 U.S. 590 (1975); *Bell v. State*, 724 S.W.2d 780 (Tex. Crim. App. 1986).

22

Do Not Publish