

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-17-00103-CR

_____

DOUGLAS JOHN MANIFOLD, JR., Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 196th District Court
Hunt County, Texas
Trial Court No. 31,102

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Justice Moseley

# MEMORANDUM OPINION

After Quinlan police officer David Nalls observed a vehicle swerving and its two right wheels cross over the solid white line separating the lane of traffic from the partially paved shoulder, he initiated a traffic stop. That stop, and the ensuing actions of the driver, Douglas John Manifold, Jr., resulted in Manifold being convicted by a Hunt County jury for possession of a controlled substance (methamphetamine) with intent to deliver[1] in the trial court's cause number 31,227 and with tampering with evidence[2] in its cause number 31,102. After enhancing punishment for two prior felony convictions, the trial court sentenced Manifold to fifty years' imprisonment on each conviction, to run concurrently. Manifold has filed a single brief challenging both convictions.[3]

In this appeal, Manifold challenges his conviction in cause number 31,102. Manifold asserts that the trial court erred (1) in denying his motion to suppress evidence and (2) in denying his request for an Article 38.23[4] instruction on whether he drove on an improved shoulder.

---

[1]*See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.102(6), 481.112(a), (d) (West 2017).

[2]*See* TEX. PENAL CODE ANN. § 37.09(a)(1), (c) (West 2016).

[3]Manifold's appeal of his conviction for possession of a controlled substance with intent to deliver is addressed in an opinion released the same date as this opinion in our cause number 06-17-0101-CR.

[4]*See* TEX. CODE CRIM. PROC. ANN. art. 38.23(a) (West 2005). Article 38.23(a) states:

> (a)    No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.
> In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

*Id.*

Manifold also challenges the legal sufficiency of the evidence supporting his conviction for tampering with evidence. Because we find that (1) the trial court did not err in denying his motion to suppress evidence, (2) the trial court did not err in denying his request for an Article 38.23 instruction, and (3) sufficient evidence supports his conviction, we will affirm the judgment of the trial court.

## I. The Trial Court Did Not Err in Denying Manifold's Motion to Suppress

In his second issue, Manifold complains that the trial court erred in denying his motion to suppress evidence. Manifold asserts that at the hearing, Officer Nalls testified that he initiated the traffic stop because Manifold had driven on an improved shoulder. He argues that the audio/video recording from Nalls' dash camera shows that the shoulder upon which Manifold drove was only partially paved and that a partially-paved shoulder does not qualify as an improved shoulder under the Transportation Code.[5]

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review, giving almost total deference to the trial court's determination of historical facts that turn on credibility and demeanor, while reviewing other application-of-law-to-fact issues de novo. *See Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002); *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). We also afford nearly total deference to trial court rulings on application-of-law-to-fact questions, also known as mixed questions of law and fact, if the

---

[5]The Transportation Code defines a "[s]houlder" as "(A) the portion of a highway that is: adjacent to the roadway; (B) designed or ordinarily used for parking; (C) distinguished from the roadway by different design, construction, or marking; (D) and not intended for normal vehicular travel." TEX. TRANSP. CODE ANN. § 541.302(15) (West 2011). The Transportation Code defines an "[i]mproved shoulder" as "a paved shoulder." TEX. TRANSP. CODE ANN. § 541.302(6) (West 2011).

resolution of those ultimate questions turns on an evaluation of credibility and demeanor. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). Appellate courts review mixed questions of law and fact not falling within this category on a de novo basis. *Id.* We must affirm the decision if it is correct on any theory of law that finds support in the record. *Osbourn v. State*, 92 S.W.3d 531, 538 (Tex. Crim. App. 2002).

A routine traffic stop implicates both the United States and Texas Constitutions, and under both, the stop must be reasonable. *Berkemer v. McCarty*, 468 U.S. 420 (1984); *Earl v. State*, 362 S.W.3d 801, 802 n.2 (Tex. App.—Texarkana 2012, pet. ref'd); *see* U.S. CONST. amend. IV; TEX. CONST. art. I, § 9. An officer may conduct a constitutionally valid traffic stop if he has a reasonable suspicion based on "specific[,] articulable facts that, when combined with rational inferences from those facts, would lead [the officer] to reasonably suspect that [the person stopped] has engaged or is (or soon will be) engaging in criminal activity." *Hamal v. State*, 390 S.W.3d 302, 306 (Tex. Crim. App. 2012) (quoting *York v. State*, 342 S.W.3d 528, 536 (Tex. Crim. App. 2011)); *Zervos v. State*, 15 S.W.3d 146, 151 (Tex. App.—Texarkana 2000, pet. ref'd). Since the reasonable suspicion standard is an objective standard, the subjective intent of the officer making the stop is irrelevant. *Hamal*, 390 S.W.3d at 306; *York v. State*, 342 S.W.3d 528, 536 (Tex. Crim. App. 2011). "If an officer has a *reasonable basis* for suspecting that a person has committed a traffic offense, the officer may legally initiate a traffic stop." *Zervos*, 15 S.W.3d at 151; *Graves v. State*, 307 S.W.3d 483, 489 (Tex. App.—Texarkana 2010, pet. ref'd).

At the hearing on Manifold's motion to suppress, Nalls testified that he was on Quinlan Parkway in Quinlan when he observed that Manifold's vehicle appeared unable to remain in the

4

same lane of traffic. He explained that he saw the vehicle go over the white line and drive on the improved shoulder. He also testified that none of the exceptions under the Transportation Code that allows a vehicle to be driven on an improved shoulder were present.[6] After Nalls activated his overhead lights, Manifold turned left onto Main Street and eventually stopped when a female jumped out of the car and started running. On cross-examination, Nalls testified that when he got Manifold out of the vehicle he told him that he stopped him for failure to maintain his car in a lane. He also testified that he thought fifty percent of Manifold's vehicle had traveled over the white line.

The State also introduced the recording of the stop made by Nalls' dash-mounted camera, which shows Manifold's vehicle traveling on a clearly marked roadway containing three lanes: one in each direction, with a left turn lane in the middle. The recording reveals that as he is traveling in the same direction as the police car, the right wheels of Manifold's vehicle drove on the solid white line separating his traffic lane from the partially paved shoulder, came back into the traffic lane, and then crossed over the solid white line and traveled on the paved portion of the shoulder. The recording also shows that Nalls' overhead lights were activated immediately after the second encroachment. In addition, the recording shows that the paved portion of the shoulder upon which Manifold drove extends about one-half of his vehicle's width past the solid white line.

After viewing the recording, the trial court denied the motion, and stated

[I]n my observation of the video, it does appear that the -- that both of the passenger side tires of Mr. Manifold's vehicle crossed the fog line immediately prior to his left-hand turn, immediately prior to the officer initiating his sirens -- excuse me --

---

[6]*See* TEX. TRANSP. CODE ANN. § 545.058 (West 2011).

his lights. And the Court therefore finds that that alone constitutes reasonable suspicion for a stop. And the Motion [sic] to suppress is denied.

When a roadway is divided into two or more clearly marked traffic lanes, the Transportation Code requires the operator to "drive as nearly as practical entirely within a single lane." *Leming v. State*, 493 S.W.3d 552, 556 (Tex. Crim. App. 2016) (quoting TEX. TRANSP. CODE ANN. § 545.060(a)(1) (West 2011)). The Transportation Code also provides, "A person commits an offense if the person performs an act prohibited or fails to perform an act required by this subtitle." TEX. TRANSP. CODE ANN. § 542.301(a) (West 2011). Thus, it is an "offense to fail to remain entirely within a marked lane of traffic so long as it remains practical to do so." *Leming*, 493 S.W.3d at 559–60. Since it is undisputed that Nalls observed Manifold cross the white line and fail to remain entirely within a single lane of traffic, he had a reasonable basis for suspecting that Manifold had committed a traffic offense, and he could legally initiate the traffic stop. *See Zervos*, 15 S.W.3d at 151; *Graves*, 307 S.W.3d at 489. Therefore, we find that the trial court did not err in denying the motion to suppress. We overrule Manifold's second issue.

## II.     The Trial Court Did Not Err in Denying Manifold's Article 38.23 Request

In his first issue, Manifold complains that the trial court erred in refusing to submit his requested Article 38.23 instruction. *See* TEX. CODE CRIM. PROC. ANN. art. 38.23(a). The argument raised in this issue is based exclusively on the argument brought before this Court in the companion appeal styled *Manifold v. State*, cause number 06-17-00101-CR. In our opinion of this date disposing of that appeal, we found that the trial court did not err in denying his Article 38.23 request. For the reasons set out in that opinion, we overrule Manifold's first issue as it applies to this appeal.

6

## III.     Sufficient Evidence Supports Manifold's Conviction

In his third issue, Manifold challenges the legal sufficiency of the evidence supporting his conviction.[7] Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge is "one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id*. To obtain a conviction, the State was required to show, beyond a reasonable doubt, that Manifold, (1) knowing that an investigation was in progress, (2) intentionally or knowingly concealed a thing (namely, a plastic baggie) (3) with intent to impair

---

[7]To evaluate legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd). In our rigorous review, we focus on the quality of the evidence presented. *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). In drawing reasonable inferences, the jury "may use common sense and apply common knowledge, observation, and experience gained in the ordinary affairs of life." *Duren v. State*, 87 S.W.3d 719, 724 (Tex. App.—Texarkana 2002, pet. denied) (citing *Manrique v. State*, 994 S.W.2d 640, 649 (Tex. Crim. App. 1999) (Meyers, J., concurring)). Further, the jury is the sole judge of the credibility of the witnesses and the weight to be given their testimony and may "believe all of a witnesses' testimony, portions of it, or none of it." *Thomas v. State*, 444 S.W.3d 4, 10 (Tex. Crim. App. 2014). We give "almost complete deference to a jury's decision when that decision is based on an evaluation of credibility." *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008).

In our review, we consider "events occurring before, during and after the commission of the offense and may rely on actions of the defendant which show an understanding and common design to do the prohibited act." *Hooper*, 214 S.W.3d at 13 (quoting *Cordova v. State*, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985)). It is not required that each fact "point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Id.* Circumstantial evidence and direct evidence are equally probative in establishing the guilt of a defendant, and guilt can be established by circumstantial evidence alone. *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13 (citing *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004)).

7

its availability in the investigation. *See* TEX. PENAL CODE ANN. § 37.09(a)(1). Manifold challenges only the evidence supporting the jury's finding that he hid the baggie while an investigation was in progress.

We have fully set forth the evidence presented at trial in our companion opinion issued in cause number 06-17-00101-CR. The jury heard Nalls' testimony that after Officer Daniel Catalan pursued Shelby Manifold (the female who jumped out of Manifold's vehicle and ran), Nalls placed Manifold, without handcuffs, into the back seat of the patrol car. They also saw the recording from the back seat camera that showed Manifold put his right hand down the front of his pants for several seconds, then take something out enclosed in his fist. The same hand is then put down the back of his pants while he squirms around. After he removes his hand from the back of his pants, Manifold appears to sit leaning on one buttock. The jury also heard the officers' testimony, as confirmed by the recording from the dash-mounted camera, that after this, when Manifold was being frisked around the groin and buttocks area, he lifted his leg and forcefully put his elbow out to keep Nalls away from that area. They also heard the testimony of the Hunt County jail guards regarding Manifold's resistance to a search of his anal area and their discovery of the baggie containing methamphetamine concealed in his anus.

A reasonable jury could infer from this evidence that Manifold possessed the baggie containing the drugs at the time of the traffic stop, that he had concealed it, first in the front of his pants, and later in his anus, while sitting in the back seat of the patrol car, and that the investigation was in progress at the time. Therefore, we find that the evidence is legally sufficient to support Manifold's conviction. We overrule Manifold's third issue.

8

For the reasons stated, we affirm the trial court's judgment.


Bailey C. Moseley
Justice

Date Submitted:     November 2, 2017
Date Decided:      November 9, 2017

Do Not Publish